The opinion of the court was delivered in November term 1800, by
Kiksey, O. J.
(After stating the facts of the case.) — -A great part of argument turned upon the question, whether Jacob Wortendyk took an estate in fee or in tail under the will of his father ? and this seemed to depend in a great measure upon another, viz., whether the latter clause in this will, declaring, that in case of the death of any of his children without issue, the survivors or their heirs should *452 take the share of such children so dying, be applicable to the North River lands only, or extends to the preceding devises, and embraces that to Jacob, under whom the defendant claims ?
In the outset I will remark, that little or no importance is to be attached to the use of the word assigns in this case, a circumstance upon which a considerable part of the argument was founded. I am not aware of a single case, wherein a certain interest. *having been given in a will, this word has been held to enlarge, or in any manner to affect this interest. Every interest recognized by the law, unless under particular circumstances, is the object of an assignment. It belongs essentially to every species of interest or property, and the introduction of the term is therefore, in every case, superfluous and inoperative in a conveyance of property. The first section of Lyttleton shews that this word has no enlarging power in a conveyance; and Coke, in his commentary, fol. 9, b., shews that it is the same in case of a will. The argument, therefore, resting upon this basis, is entitled to no consideration.
As an evidence of intention, I am disposed to view it in the same light; it is annexed indiscriminately to every clause in the will, and seems to have been used rather as a word of form, than as one to which the testator had attached any definite meaning. The intention, to which we are to look in settling a question upon a will, is not a forced, conjectural, or possible intention, but such as, from the whole tenor of the instrument, appears to have been in the mind of the testator, whether clothed in technical language or not.
Equally unimportant is. the argument raised on the present occasion, from the word faying. This word is undoubtedly, in some instances, amply sufficient to carry the fee, where the other parts of the will do not give such an estate in express words, or by necessary implication. It will sometimes enlarge an estate which the testator has in so many words called an estate for life, when a reasonable *453 doubt exists as to what may be called the general intent of the testator. In this case, the words of the first devise carry a fee; if they are clear and express, and not limited by any subsequent expressions, they can derive no additional strength by inference, from the circumstances of the charge. If the subsequent words are sufficient to control and narrow down the express devise in fee to an estate in tail, they surely must have the same force in qualifying that which is built wholly upon inference and conjecture. It is only in doubtful cases, and to ascertain an uncertain intention, that this circumstance can be permitted to weigh.
The plaintiff, acknowledging that the terms of the first devise are sufficient of themselves to carry the fee, considers them as afterwards limited by the restricting clause, which extends, as is ^contended, to all the antecedent devis’es, and explains the previous devise to Jacob. This is the point upon which the case hinges, and which it becomes important to examine with care. Some preliminary observations will render this investigation more easy, and the determination of the question more satisfactory.
In the first place I remark, that it is a clearly settled rule of law, that wherever a testator makes clashing limitations in his will, or whenever it becomes necessary that either a particular or general intent should give way, courts will and ought to consider the latter as countervailing the former. Robinson v. Robinson, 1 Burr. 38; Roe v. Grew, 2 Wils. 322; Den v. Puckey, 5 Term Rep. 303; Roe v. Rivers, 7 Term Rep. 272. This principle is founded in reasou, and lias long been recognized in the law.
Another rule adopted in the construction of devises, deserves notice. A testator in using technical words, does not always understand them in a strictly technical sense. This is frequently the case with the word heirs, which in many instances, in vulgar parlance, signifies only children. When ibis word, therefore, occurs in a will if must first be ascertained, whether by it the testator intended that sue- *454 cession of persons who come under the denomination of heirs? If he did mean it in this general and technical sense, he never can be permitted so far to control the rules of property, as to enable one taking under the heir to take in any other manner than in the quality of heir; that is, he must take by descent, and not by purchase. Jones v. Morgan, 1 Br. Ch. Rep. 206, 220. The same rule is to be observed when' the word issue is employed. Erom this principle, therefore, it results, that an express devise in fee or for life to the first devisee is a point wholly immaterial; and whether he shall take such estate as is expressly given, must depend upon the subsequent words, which may either enlarge or narrow the first devise.
These positions.must be assumed as the settled doctrines of the law, and therefore, notwithstanding the original devise to Jacob, clearly was sufficient of itself to carry a fee; yet if the last clause in -the will did actually apply to and .restrict this general language, the intent to be collected from the whole instrument is clearly, that when Jacob died without issue his surviving brothers and sisters must take. The general intent must prevail.
*This brings the case which we are to decide within narrower limits, and renders it, as was correctly remarked at the bar, altogether a question of intention. My mind has wavered in laboring to ascertain this intention, and to extract a definite meaning from an instrument, evidently -written by a man totally ignorant of. the meaning of language, who appears to have got by rote some technical' expressions which he -had, perhaps, heard were important, and who scatters them ynth a profuse hand where they might be necessary, and where they tend rather to confuse and hide, than to illustrate his intention. In almost every clause of the will, those expressions which are used to convey a fee in real estate in conveyances at common law', are introduced without discriminating between the different kinds of property which happened to be under considera *455 tion; and the old family bible is given to his son Rynier, his heirs and assigns for ever. Under such circumstances, the safest, and, perhaps, most infallible rule will bo to presumo, that whenever he did make use of apt and proper words, he intended them to be construed according to their legal meaning. In this rule wo may arrive at certainty >' once abandon it, and we are thrown from conjecture to conjecture, from uncertainty to uncertainty.
After the fullest examination which it has been in my power to give to this will, I am satisfied that the latter clause providing, that in case of the death of any of his children without issue their proportion to go to the survivors, must be confined to the North River lands, and does not include the property previously disposed of specifically to his sons. That it therefore does not affect or control the previous devise to Jacob, and that the lessor of the plaintiff cannot recover in the present ejectment.
The design of the testator, as collected from the entire will, seems agreeable to the general custom prevailing in New Jersey, to give the real estate to his male descendants who bear his name, and keep up the family, and to provide the daughters with portions payable out of the real property given to the sons. The North River lands do not appear to have been so far improved as to bear the name of farm, and probably were a recent acquisition by the testator, which he was not particularly anxious to retain in the family. It forms, however, evidently an exception to the general disposition which he made, and his general intent to confine the real estate to the male children. The implication therefore is, that in the controling clause he meant to extend the daughters’ interest no further; that ho had no design of running counter to the obvious intention of the former devises, but merely to superada a clause to the disposition which he had so immediately before made.
It must be remembered, that, at the time of the making this will, the daughters were not entitled, under our laws of *456 descent, to any portion of the real property. With this circumstance we must presume the testator acquainted; and he must therefore have known that it required an express devise to them to entitle them to any proportion of his land. The express devise is made of the North River lands, but not being made of any interest in the remaining property, the inference is almost irresistible, that he did not contemplate their taking it in any contingency. There is surely, however, no ground to infer that he designed to prefer the daughters to the sons, as may be the case, if the construction of the plaintiff is correct.
To consider this clause as controling the devise of the homestead, would be to impose a burthen of £80 on these lands, to be paid to the daughters. By annexing this charge, there is a possibility of a loss to the son, which we cannot presume was the. intention of the testator, and that the daughters, after receiving this payment, should, in any possible contingency, receive also their share of the land; a supposition so unreasonable that we cannot imply it under the circumstances of this case. It would render Jacob, for ten years after he came into possession, a mere servant or agent for the daughters, without remuneration,.and possibly with loss, and then narrow down his interest to a precarious tenure during his life. This implication is in every respect so unreasonable, that if the words would bear another meaning we should consider ourselves as bound to reject it.
Further, if the testator did design to establish that equality, at least in favor of his daughters, can it be .presumed that he would have left his intention veiled with so much apparent caution ? The great and valuable parts of his property had been disposed of, and he would, in that part of his will, have intimated his design of limiting the interest of his'sons. No such view, however,-appears, until he comes to the Nprth River lands, which it has been shewn, in one particular, are disposed of in a *different manner, and, as we think, are, in this respect also, subject to a peculiar and distinct limitation.
*457 Again, if this restricting clause is not confined to the North River lands exclusively, it must embrace and control every preceding devise. There is no ground for excepting the devise to Rynier or Frederick, or the legacies to the daughters, and the word share is equally applicable to all. The family bible, the £140 bequeathed to the daughters, the £5 out of the movable property, must all be subject to the limitation, and to a division among survivors. It cannot place the absurdity of this construction in a more striking point of view, to add, that one of the daughters was a married woman, and her proportion of tho legacy was accordingly payable to her husband. Can it be presumed that the testator intended that he should refund in any contingency ? The conclusion flowing from these circumstances is strongly corroborative of the idea, that the qualifying clause was not designed by tho testator to apply to the whole will.
When, moreover, it is considered that the North River lands alone are exempted from any burthen or pecuniary charge, and that therefore no loss could accrue from limiting them in tail, and that, by thus confining the application of the qualifying clause, every word in the will will have its use, and none be rejected, there can exist no reason for unnecessarily extending it further.
But if tho intention remained dubious, as there is a clear and absolute fee once given, this ought to be preserved, until destroyed‘by words as express, and an intention as plain, as that by which it was created. On tho whole case, therefore, viewed in every light in which it could be brought under consideration, we are of opinion with the defendant.
Judgment for defendant. .